UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-630-RJC

| | |
|---|---|
| ACE MOTOR ACCEPTANCE CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| McCOY MOTORS, LLC et al., | ) ) ) |
| Defendants. | ) ) |
| _____ | ) |

## ORDER WITHDRAWING ADVERSARY PROCEEDING AND FINDING PROBABLE CAUSE FOR CRIMINAL CONTEMPT

**THIS MATTER** is before the Court on the Order of the Bankruptcy Court

Recommending Withdrawal of Reference of Adversary Proceeding No. 18-03036 for

Further Civil, and Potentially Criminal, Contempt Proceedings, (Doc. No. 1), and

the Supplemental Order, (Doc. No. 2). In these Orders, the United States

Bankruptcy Judge, recommends that this Court withdraw reference of this

adversary proceeding in its entirety pursuant to 28 U.S.C. § 157(d) to conduct

further civil and criminal contempt proceedings against Defendants—McCoy

Motors, LLC ("McCoy Motors"), Robert McCoy, Jr. ("McCoy"), and Misty McCoy.

Civil and criminal contempt actions are distinguished on the basis of the

nature of the relief requested: (1) if the relief is remedial, coercive or compensatory,

the contempt is civil; (2) if the relief is punitive (which would be a sentence of

imprisonment for a definite period or a punitive monetary penalty in the case of a

1

corporation), then the contempt is criminal. Hicks v. Feiock, 485 U.S. 624, 631–36 (1988); International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 829 (1994). Unlike the standard for civil contempt which need only be shown by "clear and convincing evidence," criminal contempt must be shown 'beyond a reasonable doubt." The Court of Appeals for the Fourth Circuit has held as follows:

> A court may impose sanctions for civil contempt "to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy." In re General Motors Corp., 61 F.3d 256, 258 (4th Cir. 1995) (internal quotation marks and citation omitted). Imposition of civil contempt sanctions requires fewer procedural protections than those necessary for the imposition of criminal contempt sanctions. See Bagwell, 512 U.S. 821, 830–31, 114 S. Ct. 2552. For example, unlike a finding of criminal contempt, which must rest on proof of guilt beyond a reasonable doubt, a finding of civil contempt can be established by "clear and convincing evidence." See Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir.2000); 11A Wright, Miller & Kane, Federal Practice and Procedure § 2960, at 380 (2d ed. 1995). Similarly, because they are civil, not criminal, proceedings, the right to counsel is not guaranteed in civil contempt proceedings.

Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 821 (4th Cir. 2004).

The Court has considered the Orders by the Bankruptcy Judge, reviewed the record and docket in the Bankruptcy Court, and determined that probable cause exists to prosecute **ROBERT McCOY, Jr. and MISTY McCOY** for criminal contempt. In accordance with Rule 42(a)(2), Federal Rules of Criminal Procedure, the Court will request that the United States Attorney for the Western District of North Carolina prosecute such criminal contempt.

Having considered the Bankruptcy Court's Order Finding Certain Defendants in Civil Contempt, (Doc. No. 1-1), and Orders Recommending Withdrawal of Reference, (Doc. Nos. 1–2), the Court enters the following Order.

**IT IS, THEREFORE, ORDERED** that

(1) The Orders of the Bankruptcy Court Recommending Withdrawal of Reference, (Doc. Nos. 1–2), are **GRANTED**. Specifically, Adversary Proceeding No. 18-03036 should be withdrawn from the Bankruptcy Court to the Western District of North Carolina;

(2) The **UNITED STATES ATTORNEY** for the Western District of North Carolina is requested, in accordance with Rule 42(a)(2), to prosecute this matter, and, if he declines to do so, to so advise the Court not later than **February 25, 2019**;

(3) Separate and apart from prosecuting the criminal contempt under Rule 42(a)(2), the **UNITED STATES ATTORNEY** for the Western District of North Carolina is further requested to conduct a **CRIMINAL INVESTIGATION** into the allegedly fraudulent and perjurious conduct of **Robert McCoy Jr.** and **Misty McCoy**.

(4) **NOTICE** is hereby given to **Robert McCoy Jr. and Misty McCoy** as follows:

> A charge of Criminal Contempt has been lodged against you as provided herein and for the reasons outlined in Judge Whitley's Orders; such matter will be tried on **March 18, 2019, at 9:30 a.m.**, in the United States Courthouse, Charlotte, N.C. You have a right to be represented by counsel and if you cannot afford counsel the Court will appoint counsel and you have until such date to prepare a defense. You are advised that the essential facts constituting such criminal contempt are contained in the Order

of the Bankruptcy Court Finding Certain Defendants in Civil Contempt, (Doc. No. 1-1), and the Order and Supplemental Order Recommending Withdrawal of Reference, (Doc. Nos. 1–2), documents which accompany this Order. Finally, if you fail to appear as instructed, a warrant will issue for your arrest.

The Clerk of Court is instructed to issue a Summons compelling the attendance of Robert McCoy Jr. and Misty McCoy at trial on March 18, 2019, at 9:30 a.m.; a warrant for the arrest of Robert McCoy Jr. on the criminal contempt charge; and a summons for Misty McCoy on the same charge; and make a copy of this Order and Judge Whitley's Orders for service by the United States Marshal. The United States Marshal shall serve a copy of the Summons, the Warrant, this Order, and Judge Whitley's Orders, (Doc. Nos. 1, 1-1, and 2) on:

**ROBERT McCOY Jr.**
3606 Highway 51
Fort Mill, SC 29715

**MISTY McCOY**
11915 John K Hall Way
Charlotte, NC 28277

The Clerk of Court shall send a copy of this Order to counsel of record, the Clerk of the Bankruptcy Court, and to:

**THE HONORABLE R. ANDREW MURRAY, Esq.**
United States Attorney for the Western District of North Carolina

Signed: February 5, 2019

Robert J. Conrad, Jr.
United States District Judge

FILED & JUDGMENT ENTERED
Steven T. Salata

November  21  2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | **Chapter 11** |
| | ) | **Case No. 18-30426** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | **Adversary Proceeding** |
| v. | ) | **No. 18-03036** |
| | ) | |
| **McCoy Motors, LLC;** | ) | |
| **McCoy Motors, LLC, d/b/a Ride Fast;** | ) | |
| **Robert McCoy, Jr.; and Misty McCoy** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER RECOMMENDING WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING FOR FURTHER CIVIL, AND POTENTIALLY CRIMINAL, CONTEMPT PROCEEDINGS

**THIS MATTER** is before this Court on its October 19, 2018 Order Finding Certain

Defendants in Civil Contempt and Continuing Pretrial Conference (the "Contempt Order").  On

November 6, 2018, a follow-on hearing was conducted (the "Purge Hearing") at which McCoy

Motors, LLC ("McCoy Motors") and Robert McCoy Jr. ("McCoy") (collectively, the "Defendants"), Misty McCoy, and Ace Motor Acceptance Corporation ("Ace") appeared. Evidence was taken and at the conclusion of the Purge Hearing, the matter was taken under advisement.

**Holding:** Because the Defendants have entirely failed to purge their civil contempt, and appear to have secreted Ace's collateral, this Court recommends that the U.S. District Court withdraw reference of this adversary proceeding for two purposes.  First, to consider imposition of further civil contempt sanctions in order to obtain compliance with the aforementioned orders or afford compensation made to Ace.  Such sanctions would likely involve (a) incarceration of McCoy until compliance is had and/or (b) striking the Defendants' answers and entering default against them in this adversary proceeding.  Second, to consider whether McCoy and McCoy Motors should be cited for criminal contempt for their repeated failures to abide by orders of this bankruptcy court.

The history of this dispute and the underlying prior proceedings leading up to the Contempt Order are detailed in the Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction (the "June 25 Order") (Docket no. 8), the Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "August 1 Order") (Docket no. 26), and the Contempt Order (Docket no. 47).  The findings contained in the June 25 Order, August 1 Order, and the Contempt Order are adopted by reference.  However, a brief overview is helpful to provide context.

Ace is a Debtor in Possession in a liquidating Chapter 11 case filed on March 15, 2018. Prior to bankruptcy, Ace was in the business of providing floorplan lending services to used car dealerships.  McCoy Motors, located in York County, SC, is one of those dealerships.  McCoy

owns and operates McCoy Motors.  Paradoxically, Ace, the bankruptcy debtor, is acting in this adversary proceeding as a lender and secured creditor of McCoy Motors, as well as of McCoy and wife Misty McCoy, its borrowers.

In this action, Ace seeks a) turnover of its property under Bankruptcy Code Section 542, b) repossession and foreclosure of its Article 9 security interests in the property of McCoy, Misty McCoy, and McCoy Motors, and c) collection of the monies owed it by its borrowers, McCoy, Misty McCoy, and McCoy Motors, under the lending arrangement.

This action is one which Ace might pursue in the ordinary course of its business, meaning a state court would have been a better forum.  However, because McCoy Motors filed a $1,431,867.32 proof of claim in Ace's bankruptcy case based on the contractual agreements at issue in this action, bankruptcy subject matter jurisdiction lies under 28 U.S.C. § 1334.  As to McCoy Motors, this is a "core" matter pursuant to 28 U.S.C. § 157(b)(3).  As to McCoy and Misty McCoy, this action is only "related to," and these two parties have not expressly consented to a final disposition by the bankruptcy court, nor have they filed a proof of claim against Ace.  Also, there are potential jury trial rights by McCoy and Misty McCoy as to some, if not all, of Ace's claims.

Ace's Complaint sought a temporary restraining order and other emergency relief— essentially an effort to obtain judicial assistance in its UCC foreclosure action.  (Docket no. 1). The initial hearing on those requests fell in a week when a full-blown evidentiary hearing could not be held.  To maintain the status quo, the parties consensually entered into the June 25 Order, effectively a temporary restraining order.  A preliminary injunction hearing was scheduled for July 18, 2018.

At the preliminary injunction hearing, extensive evidence was taken regarding the

allegations in Ace's Complaint.  At the conclusion, this Court made a bench ruling in favor of Ace—including a finding of a substantial monetary default by the Defendants under the parties' agreements and a right by Ace to possession of the purchased accounts (11 U.S.C. § 542) and its collateral under the Uniform Commercial Code (Article 9-503 and 9-601).  After receiving proposed findings from the parties, the written August 1 Order was entered.  The Defendants received notice of the August 1 Order via first class mail.

On July 30, 2018, prior to entry of the August 1 Order, Ace filed its Motion for Order Finding Defendants in Contempt of June 25, 2018 Order Concerning Interim Servicing of Accounts of Vehicle Buyers (the, "First Contempt Motion"), asserting that the Defendants (including Misty McCoy) were in willful violation of the June 25 Order, having failed to account, escrow collections, and otherwise comply.

On August 31, 2018, Ace filed a Supplemental Motion for Order Finding Defendants in Contempt of June 25, 2018 Order Concerning Interim Servicing of Accounts of Vehicle Buyers; Motion for Order Finding Defendants in Contempt of August 1, 2018 Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "Second Contempt Motion"), seeking to hold the Defendants (including Misty McCoy) in contempt of the June 25 Order based upon new, but similar, events, as well as seeking to hold them in contempt of the August 1 Order.

The contempt motions were heard together on September 26, 2018 with additional witness testimony taken.  Ace presented substantial evidence in support of the contempt motions; whereas the Defendants produced almost no evidence of their alleged efforts to comply with the two orders. At the conclusion of the September 26, 2018 hearing, this Court made a bench ruling in favor of Ace.  That ruling was memorialized in the October 19, 2018 written Contempt Order. The Contempt Order holds the Defendants, McCoy and McCoy Motors, in civil contempt for failing

to comply with both the June 25 Order and the August 1 Order.[1]  The Contempt Order details the numerous instances of the Defendants' non-compliance with the aforementioned orders.  It specifically identifies the orders' requirements as well as the evidence demonstrating the Defendants' non-compliance in its Appendix A.

The Contempt Order also afforded the Defendants an opportunity to purge and set a hearing for this purpose:

a.   "[F]ully comply[ing] with each provision of the June 25 Order and August 1 Order by specifically correcting the deficiencies highlighted in Appendix A…" within 14 days of entry of the Contempt Order;

b.   Paying a fine of $250 per day for each day beyond 14 days of entry of the Contempt Order until full compliance with the June 25 Order and August 1 Order is forthcoming; and

c.   Paying Ace's reasonable attorney fees and costs incurred in attempting to enforce the June 25 Order and August 1 Order.[2]

Exhibit A delineates with specificity the contemptors' failures to comply.

The Contempt Order was served on the Defendants on October 22, 2018.  (Docket no. 48).

The Purge Hearing was conducted on November 6, 2018, whereat both sides presented additional testimony and documentary evidence.  That evidence reflects that the Defendants have not in any way purged themselves of their contempt; nor have they made any effort to do so.  Rather than attempting to purge, at the November 6, 2018 Purge Hearing, the Defendants sought to relitigate the issues previously addressed and ruled on at the preliminary injunction hearing and

---

[1] Misty McCoy was not found to be in civil contempt because she is but a sporatic employee of McCoy Motors and Ace was unable to link her to any failure to comply with the two Orders.
[2] Due to the time required to receive an itemization and objections, an Order taxing the Defendants with Ace's costs and attorney's fees has yet to be entered.

5

the September 26, 2018 hearing.  Despite all evidence to the contrary, the Defendants insist that they were never actually in contempt.[3]  Their only specific argument against turnover of the vehicles found on the McCoy Motors lot to Ace was McCoy's suggestion that he could not do so because the vehicles might be subject to liens superior to Ace's.  That contention is not a defense. Withholding vehicles was not an option afforded to them by the Contempt Order.  Furthermore, the argument is without legal merit.  Ace holds a blanket security interest on all of McCoy Motors' property, including its vehicle inventory.  Section 25-9-610 of the North Carolina General Statutes sets forth the rules for the disposition of collateral after default.  "Disposition rights…are not limited to first-priority security interests.  Rather, any secured party as to whom there has been a default enjoys the right to dispose of collateral under this section."  N.C. Gen. Stat. § 25-9-10 cmt. 5 (2018); see *W. Nat. Bank of Casper v. ABC Drilling Co.*, 42 Colo. App. 407, 412, 599 P.2d 942, 946 (1979).

In short, the Defendants remain in contempt of this Court's orders, and defiantly so.  The June 25 Order required the Defendants to provide full and accurate accountings, documentation showing what funds were in their possession and control as of June 21, 2018, and documentation demonstrating that they paid all collections from vehicle buyers over to the Lange Escrow Account.  (Docket no. 8).  To date, the Defendants have provided little to none of this information. The August 1 Order required the Defendants to stop collecting payments from Ace's customers/vehicle buyers, turn over any cash or monies to Ace, turn over any vehicles to Ace,[4]

---

[3] The Defendants never filed a reconsideration motion or appeal.

[4] This prior conclusion requires elaboration.  FRBB 7064 and a state attachment law may not be employed across state lines if the action is simply one by an <u>unsecured</u> creditor to obtain a money judgment against the defendant.  However, federal equitable relief is available to a <u>secured</u> creditor with a UCC security interest in the debtor's property and a right to require the debtor to assemble and make that property available when, as here, the property is located in more than one state.  *Clark Equip. Co. v. Armstrong Equip. Co.*, 431 F.2d 54, 55 (5th Cir. 1970).  Similarly, preliminary federal injunctive relief has been accorded to sureties to enforce collateral security provisions of their indemnity contracts.  *First*

6

provide copies of all accounting records and bank statements to Ace, turn over any GAP refunds to Ace, and cease transferring, dissipating, concealing, moving, or disposing any assets of Ace or the Defendants.  (Docket no. 26).

On this record, the Defendants appear to have violated each of these mandates.  They have done everything in their power to avoid compliance and circumvent the orders.  For instance, the Defendants have refused Ace access to its collateral, secreted records and assets, filed complaints in other forums, ceased business in an effort to create the appearance that they do not control or possess any assets, created a successor business in Flash Autos, attempted to delay hearings, and— although not fully supported by the evidence—attempted to harass and intimidate Ace employees and counsel for Ace through social media and bar complaints.  (Docket no. 47).  As of today's date, Ace has yet another motion pending containing specific averments of improper actions by McCoy and McCoy Motors undertaken since the Purge Hearing. (Docket no. 100). If these averments are true, it would appear that the Defendants (including Misty McCoy) are attempting a wholesale fraud on this Court and on Ace.  This action is quickly becoming a criminal matter.

Given this, and because orders and fines have failed to secure compliance, it may be appropriate to consider incarcerating McCoy—for civil contempt in order to secure compliance and for criminal contempt "to vindicate the authority of the court." *Bradley v. Am. Houshold Inc.*, 378 F.3d 373, 378 (4th Cir. 2004) (quoting *Buffington v. Baltimore Cty., Md.*, 913 F.2d 113, 133 (4th Cir. 1990).  Further, in order to compensate Ace, and to avoid even further dissipation of its property and collateral by the Defendants, it may be necessary to strike the Defendants' answers and enter default against them.

---

*Nat. Ins. Co. of Am. v. Sappah Bros. Inc.*, 771 F. Supp. 2d 569 (E.D.N.C. (2011); *Auto-Owners Ins. Co. v. Randy B. Terry, Inc.*, No. 5:12-CV-02717-TMP, 2013 WL 6583959 (N.D. Ala. Dec. 16, 2013).

At a minimum, it would be appropriate to issue a writ of assistance to secure the aid of the U.S. Marshal Service to Ace in obtaining its remaining outstanding property and vehicle collateral, located at the lot of McCoy Motors in Fort Mill, South Carolina. As detailed in the Contempt Order, this property is being withheld from Ace in contradiction to the parties' agreements and Ace's rights under 11 U.S.C. § 542 and as a secured creditor under the Uniform Commercial Code. Heretofore, no bond or security has been required of Ace by this Court as contemplated by F.R.B.P. 7064. However, with it now appearing that the property rights of third parties may be implicated (the alleged affected superior lienholders of vehicles and the unnamed landlord of McCoy Motors' Fort Mill location), the undersigned recommends that recovery assistance by the U.S. Marshals be conditioned upon Ace posting a surety bond to protect third parties from harm.

Given the number of opportunities and refusals by the Defendants to comply with prior orders of this Court, it would also appear that this has become a matter of criminal contempt. *See Blackmon v. Taylor (In re Blackmon)*, No. 314-CV-00507-RJC, 2016 WL 3679395, at *2 (W.D.N.C. July 11, 2016) ("Where it appears, however, that a defendant is unable **or unwilling** to purge his contempt, the punitive sanction of incarceration for criminal contempt may be appropriate.") (emphasis added).

It is widely acknowledged that bankruptcy courts have civil but not criminal contempt powers. *See Walters v. Burd (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989) (holding that bankruptcy courts have civil contempt power); *see also Souther v. Tate (In re Tate)*, 521 B.R. 427, 440 (Bankr. S.D. Ga. 2014) ("Many courts interpret § 105 to grant bankruptcy courts the power to sanction civil, but not criminal, contempt."). Thus, this Court lacks the power to initiate criminal contempt proceedings against defendants and only may recommend the same to the U.S. District Court.

Furthermore, it appears that a bankruptcy judge may lack sufficient authority to hear and make a final disposition in this adversary proceeding.  *See Wellness Int'l Network, Ltd. V. Sharif*, 135 S. Ct. 1932, 1940 (2015) (Bankruptcy courts may only hear and determine non-core proceedings "with the consent of all the parties to the proceeding.")*.*  While McCoy Motors has implicitly consented to the subject matter jurisdiction of this Court by filing a proof of claim, McCoy and Misty McCoy have not.  *See Langenkamp v. Culp*, 498 U.S. 42 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59, and n. 14, 109 S. Ct. 2782, 2799-2800, and n. 14).  It further appears that jury rights may ultimately be implicated.  If this matter makes it to trial, this Bankruptcy Court would be unable to conduct the same.

If, however, noncompliance with the prior orders continues, the pretrial sanction of default may be necessary.  This, too, would be a case dispositive decision and this bankruptcy court could only make a recommended order to the district court.  Given these constitutional limitations, and with no small reluctance in saddling the U.S. District Court with a matter of this ilk, the undersigned recommends that the Article III Court withdraw reference of this adversary proceeding pursuant to 28 U.S.C. § 157(d) for the purpose of conducting further civil and criminal contempt proceedings in the cause.

**SO ORDERED AND RECOMMENDED.**

This Order has been signed electronically.                United States Bankruptcy Court
The judge's signature and court's seal
appear at the top of the Order.

9



FILED & JUDGMENT ENTERED
Steven T. Salata

October  19  2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | **Chapter 11** |
| | ) | **Case No. 18-30426** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | **Adversary Proceeding** |
| v. | ) | **No. 18-03036** |
| | ) | |
| **McCoy Motors, LLC;** | ) | |
| **McCoy Motors, LLC, d/b/a Ride Fast;** | ) | |
| **Robert McCoy, Jr.; and Misty McCoy** | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

### ORDER FINDING CERTAIN DEFENDANTS IN CIVIL CONTEMPT
### AND CONTINUING PRETRIAL CONFERENCE

**THIS MATTER** is before the Court on 1) Ace Motor Acceptance Corporation's ("Ace")

Motion for Order Finding Defendants in Contempt of June 25, 2018 Order Concerning Interim

Servicing of Accounts of Vehicle Buyers (the "First Contempt Motion") and 2) Ace's

Supplemental Motion for Order Finding Defendants in Contempt of June 25, 2018 Order

Concerning Interim Servicing of Accounts of Vehicle Buyers; Motion for Order Finding

Defendants in Contempt of August 1, 2018 Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "Second Contempt Motion") (collectively, the "Contempt Motions"). These matters were initially scheduled for August 28, 2018, but were continued to September 18, 2018 due to the Defendants' alleged inability to appear on that date.[1] These matters were again continued to September 26, 2018 due to inclement weather,[2] and finally heard on September 26, 2018. Misty McCoy, McCoy Motors, LLC ("McCoy Motors"), and the Plaintiff appeared through counsel and Robert McCoy Jr. ("McCoy") appeared pro se.

## STATEMENT OF THE CASE

The history of this dispute to date and the extensive prior proceedings in this still young adversary proceeding are detailed in the Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction (the "June 25 Order") and the Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "August 1 Order"). However, a brief summary is helpful. Ace is a Debtor in Possession in this Chapter 11 bankruptcy case as well as the Plaintiff in this adversary proceeding.

This adversary proceeding is unusual in that Ace is also a floorplan lender to the Defendants. In this action, Ace is seeking turnover of its property under Code Section 542, as well as repossession and foreclosure of its Article 9 security interests and liens in the Defendants' property, and collection of the monies owed it by its borrowers, the Defendants. Given that the action is one which Ace might conduct in the ordinary course of its business, a state court might have been a better forum for this action. However, because McCoy Motors has filed a $1,431,867.32 proof of claim in Ace's bankruptcy case based on the agreements which are at issue in this action, this is a core matter under 28 U.S.C. § 157(b)(3), and resolution of this action is

---

[1] See Order Continuing Hearing to September 18, 2018 on Conditions (Docket no. 33).
[2] See Order Continuing Hearing (Docket no. 34).

wrapped up in the claims determination.  Subject matter jurisdiction lies in federal court.

## PRIOR PROCEEDINGS AND FINDINGS OF FACT

The findings contained in the June 25 Order and the August 1 Order are adopted by reference. This Court further finds as follows:

1.  Ace is a Debtor in Possession in a liquidating Chapter 11 case filed on March 15, 2018. Prior to bankruptcy, Ace was in the business of providing floorplan lending services to used car dealerships.  McCoy Motors is one of those dealerships.

2.  Defendant McCoy Motors is a limited liability company organized under the laws of the State of South Carolina.  At all times relevant to the Contempt Motions, McCoy Motors operated two used car lots in South Carolina.

3.  Defendant McCoy is the sole owner/operator of McCoy Motors and he alone directs and controls the actions of the Defendants.

4.  Defendant Misty McCoy is McCoy's wife and an occasional employee of McCoy Motors.

5.  On or about January 28, 2018, Ace and parties of the Defendants entered into a BHPH Purchasing and Performance Agreement (the "PPA"), Agreement for Line of Credit (the "Floor Plan"), BHPH Purchasing and Performance Agreement Addendum (the "PPA Addendum"), and a BHPH Contract Servicing Agreement Addendum (the "Servicing Addendum") (collectively, the "Agreements").  Although obligors under these agreements, McCoy and Misty McCoy have executed personal guarantees of McCoy Motors' obligations to Ace under the Agreements and have granted Ace liens on personal assets to secure these obligations.

6.  Under the Agreements, Ace extended floor plan financing to McCoy Motors, purchasing many of its sales contracts with customers and paying McCoy Motors for the purchased accounts. As long as the Agreements were in effect, the Defendants were permitted to receive "Performance

Compensation" for servicing and collecting on the various contracts from vehicle buyers. In essence, the Defendants were permitted to collect on Ace's contracts, pay the proceeds to Ace, and in return, the Defendants received a portion of the monies collected. In addition to selling contracts to Ace, the Defendants granted Ace a blanket security interest in all of the Defendants' other assets, including both the assets of McCoy Motors and Misty McCoy and McCoy individually, to collateralize the floor plan obligations owed to Ace.

7. The Defendants did not have an ownership interest in the contracts and under certain conditions, the Defendants' right to receive "Performance Compensation" could be terminated. Importantly, the Defendants' right to receive "Performance Compensation" terminates as a result of the contracts being declared as "Non-Performing."

8. The Defendants were current on their obligations under the Agreements on March 15, 2018, the date this Chapter 11 case was commenced. However, shortly after, the Defendants fell into default of the Agreements in numerous ways, including substantial payment and reporting defaults. As a result of such defaults, Ace sent written Notices of Default to the Defendants.

9. The Defendants failed to cure the defaults within the time provided under the Agreements and Notices of Default. Consequently, Ace declared all of the Defendants' contracts to be "Non-Performing" and terminated the Defendants' rights to service the contracts and receive "Performance Compensation." Thus, Ace had the exclusive right to collect any and all payments due under the contracts from vehicle buyers.

10. On this record, Misty McCoy does not appear to be an active participant in the events leading up to the Contempt Motions, which are described below. Thus, as to the remaining findings and conclusions in this order, unless individually named, "Defendants" means McCoy and McCoy Motors, not Misty McCoy.

4

11. As set forth in greater detail in the June 25 Order and August 1 Order, the Defendants refused to acknowledge termination of their servicing rights and refused to allow Ace its exclusive right to collect payments due under those customer contracts owned by Ace.  Instead, they contacted vehicle customers and directed them to make payments to McCoy Motors, rather than Ace.  The Defendants also denied Ace access to its collateral.  Finally, the Defendants filed a criminal complaint in state court against Ace employees, they initiated a state court lawsuit against Ace's repossession agent, McCoy made disparaging statements concerning Ace and its employees on social media, and the Defendants filed what appears to be a potentially fraudulent proof of claim in this bankruptcy case.

12.   As a result, Ace sought this Court's help in recovering its property (the contracts) and in foreclosing on its collateral.  Ace's Complaint sought a temporary restraining order and other emergency relief.  (Docket no. 1).  The initial hearing on those requests fell in a week when, due to other scheduled hearings, a full-blown evidentiary hearing could not be conducted.  To maintain the status quo, the parties consensually entered into the June 25 Order, effectively a temporary restraining order.  The preliminary injunction hearing was scheduled for July 18, 2018.

13. At the preliminary injunction hearing, extensive evidence was taken regarding the allegations in Ace's Complaint.  At its conclusion, this Court made a bench ruling in favor of Ace. After receiving proposed findings from the parties, the written August 1 Order was entered.

14. On July 30, 2018, Ace filed its First Contempt Motion, asserting that the Defendants (including Misty McCoy) are in willful violation of the June 25 Order in that they:

    a.  did not provide full and accurate information regarding the collections of payments from customers;

    b.  did not provide a complete accounting of Defendants' collections since June 26,

2018;

    c.  did not provide documentation demonstrating that Defendants paid all collections from vehicle buyers over to the Lang Escrow Account; and

    d.  did not provide documentation showing what funds were in the possession and control of the Defendants as of June 21, 2018.

15.  On August 1, 2018, the Preliminary Injunction Order was entered.  Notably, the August 1 Order required that the Defendants immediately:

    a.  <u>stop collecting payments</u> from Ace's customers/vehicle buyers with regard to motor vehicles and Contracts that constitute collateral under the Agreements;

    b.  <u>turn over any cash or other monies</u> to Ace, including but not limited to payment received from Ace's customers or third parties that are in any way subject to the terms of the Contracts or Agreements;

    c.  <u>turn over any vehicles</u> to Ace (including those that have been repossessed) that constitute collateral under the Agreements or related to the Contracts (<u>including all motor vehicles in Defendants' inventory</u>);

    d.  cease communicating with Ace's customers and <u>stop interfering with Ace's efforts to collect</u> on its accounts under the Contracts;

    e.  <u>provide copies of all documents, accounting records and bank statements</u> to Ace, which are relevant to the location, use and disposition of Ace's collateral;

    f.  <u>turn over any refunds for GAP protection premiums</u> paid in connection with the Contracts, which have been received or which are received in the future;

    g.  <u>cease transferring, dissipating, concealing, moving, secreting or otherwise disposing of any assets of Ace or the Defendants</u>, or assets which are the collateral

6

of Ace, including the sale of any motor vehicle in Defendants' inventory or possession, or the <u>transfer of any funds or cash</u> by the Defendants;

h. <u>cease any efforts to repossess</u> any motor vehicles;

i. <u>disclose the location</u> of all of Ace's property or collateral of Ace, <u>including all assets of the Defendants</u>;

j. <u>cooperate with Ace</u> in connection with the matters set forth in the Floorplan and Servicing Agreements; and

k. <u>forward any payments received</u>, whether related to the Contracts owned by Ace or McCoy Motors, to Ace within 24 hours of receipt.

16. On August 31, 2018, Ace filed its Second Contempt Motion, seeking to hold the Defendants in contempt of the June 25 Order based upon new events, as well as seeking to hold them in contempt of the August 1 Order. As noted, both contempt motions were heard on September 26, 2018 with additional witness testimony was taken. Ace presented substantial evidence in support of the Contempt Motions; whereas Defendants produced almost no evidence of their alleged efforts to comply with the two orders.

17. Having heard all of the evidence presented in these several hearings, and despite their active participation in this proceeding and consistent representations of a willingness to comply with these two orders, it is clear that Defendants have utterly failed to comply. In fact, they have actively attempted to thwart these orders. Defendants McCoy and McCoy Motors (which McCoy owns and controls), have made collateral attacks upon Ace and its employees, and through subterfuge, and likely perjured testimony, have attempted to secret assets and records of McCoy Motors in an attempt to show the business to be defunct, even while intending to resume its business under a new entity.

**Failures to Comply**

18. Appendix A, attached hereto, is a specific enumeration of the requirements of the two orders, the specific failures of the Defendants to comply (to the extent that these are knowable given the almost total lack of compliance), and the evidence supporting these findings. For brevity, we will summarize only the most material aspects of the Defendants' failures to comply.

19. The June 25 Order requires the Defendants to provide: "complete, accurate and current data concerning collections of the Vehicle Buyer accounts, on a daily basis…," "a complete, accurate and current accounting of account activity for all Vehicle Buyer Accounts since May 1, 2018…," and an accounting for "any funds from the collection of Vehicle Buyer accounts which are in the possession or control of McCoy [Motors] as of June 21, 2018…." (Docket no. 8). Similarly, the August 1 Order requires the Defendants to "provide copies of all documents, accounting records and bank statements to [Ace]…." (Docket no. 26).

20. Since entry of those orders, the Defendants have largely failed to provide the ordered accounting. The little information that has been provided does not cover all of the relevant time periods, is deficient, and is so limited that it is nearly impossible to assess how much is still missing. Also, the information was not provided on a daily basis, as ordered. However, based on the limited information which was provided, it appears that some $60,000 dollars was collected by the Defendants, was not turned over or deposited into escrow, and remains unaccounted for. Other examples demonstrate that the provided accounting was deficient and inaccurate. At least one vehicle customer's bank statement shows payments to the Defendants that were never accounted for or paid over to the escrow account or Ace. Additionally, Ace received numerous phone calls from vehicle customers complaining that they were never credited for payments made to the Defendants on behalf of contracts owned by Ace. The problems with the accounting are

8

exacerbated by the fact that the Defendants have also withheld their bank statements and the payment history for each vehicle buyer, making it difficult to corroborate the information provided.

21. The June 25 Order provides that any payments received by the Defendants on account of the contracts "shall be held in an escrow account maintained by Lang…." (Docket no. 8). Not only was that account not established in a timely fashion, but even after it was, the Defendants only made two belated deposits into that escrow account. This was despite the fact that the Defendants continued to collect monies on account of the contracts. Furthermore, the Defendants never provided any bank statements for that escrow account.

22. Pursuant to the June 25 Order, neither party was to "repossess...or threaten to repossess the automobile of any Vehicle Buyer, pending further order of this Court." (Docket no. 8). In similar fashion, the August 1 Order requires that the Defendants "cease any efforts to repossess any motor vehicles…." (Docket no. 26). The evidence presented shows that the Defendants repossessed at least one vehicle following entry of those orders. The disposition of that vehicle is unknown and any proceeds thereof have not been accounted for or turned over. Given the failure to provide accountings, bank statements, and deposits, coupled with the failure to provide Ace with access to McCoy Motors' premises and business records, one cannot say that this was an isolated incident.

23. The August 1 Order requires the Defendants to "turn over any vehicles to Ace…that constitute collateral under the Agreements or related to the Contracts (including all motor vehicles in Defendants' inventory)…." (Docket no. 26).[3] Furthermore, that order directs the Defendants to "cooperate with Ace in connection with those matters set forth in Paragraph 19 of the Floorplan, Paragraph 5 of the PPA and Paragraph 6 of the Servicing Agreement…." *Id.* Nevertheless, one day after entry of the August 1 Order, McCoy sent an email stating Ace was on notice not to

---

[3] Under the Agreements, the Defendants gave Ace a UCC blanket security interest in their personal property, which includes the vehicles in its inventory.

9

trespass on McCoy Motors' premises, citing a South Carolina state statute.[4]  Then, two days after

entry of the August 1 Order, McCoy emailed Ace threatening legal action against it under the Fair

Debt Collection Practices Act, Section 805(b).  Additionally, the Defendants used a limousine,

tow truck, and chain to block entrance to the lots holding the motor vehicles that are subject to the

August 1 Order.  On August 22, 2018, McCoy filed a complaint against Ace with the North

Carolina Department of Justice based upon the same arguments made and previously rejected in

this Court.  Notably, McCoy made a notation on the state form falsely certifying that his complaint

against Ace had not been heard in a court.  The North Carolina Department of Justice dispute is

but one example of the many efforts that the Defendants have made to circumvent this Court and

its orders.[5]

24. The August 1 Order further requires the Defendants to "turn over any refunds for GAP

protection premiums…which have been received or which are received in the future…." (Docket

no. 26).  The evidence shows that the Defendants canceled GAP on at least one vehicle and

received the refund, but the refund has not been accounted for or turned over.  Given the limited

information provided by the Defendants, it is impossible to foreclose the possibility that other

refunds have been received and secreted.  To date, no refunds have been turned over to Ace or

placed in escrow.

25. Finally, the August 1 Order prohibits the Defendants from "transferring, dissipating,

concealing, moving, secreting or otherwise disposing of any assets of Ace or the Defendants…."

(Docket no. 26).  However, on August 6, 2018, McCoy emailed a regional sales representative for

US Auto Credit, seeking to sell Ace accounts.  Furthermore, McCoy testified that he closed McCoy

---

[4] Thus, ignoring the fact that upon default, the Agreements, pursuant to Section 19(e) (Remedies), gave Ace the right to repossess its collateral and property.
[5] Previously, the Defendants initiated state court civil actions against the agents of Ace and filed criminal complaints against Ace.

Motors with the belief that doing so resulted in McCoy Motors owning no assets.

## Collateral Attacks

26. McCoy repeatedly threatened legal action against Ace when faced with requests for compliance with or attempts to effectuate the June 25 Order and August 1 Order, the majority of which follow closely after hearings.  As noted, recently, McCoy filed a complaint with the North Carolina Department of Justice seeking a determination that Ace owes McCoy $1,450,000.  In that complaint, McCoy completely disregards this proceeding by falsely alleging that the facts alleged in the complaint had not been "heard in court."  The August 1 Order finds that no such debt is owed to McCoy Motors; rather, Defendants owe substantial sums under the Agreements to Ace. (Docket no. 26).

## Subterfuge/False Testimony

27. McCoy's most recent efforts to avoid the two orders have centered on creating the appearance that the Defendants do not control or possess any of Ace's property or collateral, or own any assets whatsoever.  For instance, McCoy says he closed McCoy Motors shortly after entry of the August 1 Order, and sent its records to the South Carolina Department of Motor Vehicles. If true, this was done without notice to anyone, and the act stands in defiance to the requirements of the two orders.[6]  Furthermore, despite being closed, the real property "formerly" occupied by McCoy Motors continues to house approximately 100 vehicles behind a fence and a locked gate (or barricaded by blocked vehicles as described above), which McCoy claims to be storing for the rightful owners free of charge.  Ace has not been permitted to enter or examine the premises and the Defendants have not accounted for any disposition of business property or records.

28. Not coincidentally, according to the Defendants, McCoy's son is in the process of opening

---

[6]Prior to entry of the two orders, the Defendants made no mention of any need to interact with this state agency with regard to customer accounts.

a new business, "Flash," in one of the locations that McCoy Motors "previously" occupied. There is in fact a "Flash" sign in the window. McCoy and Misty McCoy allege that their son received no help from McCoy in starting "Flash" or acquiring McCoy Motor's prior premises (that still holds approximately 100 vehicles). However, their son is a 20-year old college student, who the two McCoys say has no source of income and no experience running a business. Furthermore, McCoy and Misty McCoy claim to know absolutely nothing about "Flash," other than it will be a used car dealership, not unlike McCoy Motors. McCoy and Misty McCoy claim ignorance of their son's business activities, despite the fact that their son continues to live with them approximately five days a week. Their accounts are not credible. It appears McCoy is preparing to operate McCoy Motors through a successor business.

### Defendants Failure to Appear

29. The Defendants' explanations with respect to the Order Continuing Hearing to September 18, 2018 on Conditions (Docket no. 33) were also not credible. McCoy and Misty McCoy claimed to be unable to travel and appear on the August 28, 2018 court date due to an injury sustained by McCoy the previous Sunday. They testified that McCoy had an ATV fall back upon him while unloading it from his pickup, striking him in the face and causing him to sustain a concussion. According to their testimony, McCoy was too unwell to attend court the following day and Misty McCoy stayed home on the belief that it was unsafe for him to be alone. Claiming not to know how to advise the Court and the other parties,[7] they say they alerted counsel for McCoy Motors and Misty McCoy just before the hearing began on August 28, 2018.

30. The account is possible, but hardly likely. Loading and unloading an ATV from a pickup truck is, in fact, a hazardous endeavor and it is possible that events occurred just as McCoy says

---

[7] This too is incredible in that the McCoys have routinely communicated with their opponent, its counsel, and even this bankruptcy court by email and telephone.

they did.  However, the circumstances suggest otherwise.

31. First, McCoy never saw a doctor until *after* the August 28, 2018 hearing.  He says he knew he had a concussion, and that he was evaluated by his cousin, a nurse.  However, no corroboration of that account was afforded.

32. Only upon learning, from counsel for McCoy Motors and Misty McCoy via phone immediately after court that the Court required verification of McCoy's alleged injury as a condition of continuing the hearing did McCoy see a doctor.  Although allegedly too unwell to travel to the hearing, McCoy apparently was well enough to travel to an urgent care center to obtain a physician's note—one which failed to specify any particular injury sustained by McCoy.  The physician's note simply excused McCoy from work and did not provide that he was unable to travel or appear.  Additionally, it did not specify that McCoy was so unwell that he required Misty McCoy's constant supervision such that she could not attend the hearing.

33. Second, the injury does not seem likely.  A typical ATV weighs approximately 600 pounds, a typical truck bed is about 2.5-4 feet above the ground, and loading ramps are rarely longer than 7 feet.  Had the ATV rolled back on McCoy in the manner he described, he would likely be dead or seriously maimed, crushed by the weight of the ATV driving him to the ground.  Instead, McCoy allegedly suffered only a small cut to the eye and a concussion.  Again, possible but hardly likely.

34. Finally, this is not the first time in the proceedings that the Defendants or their counsel have failed to appear for an evidentiary hearing.  The July 11, 2018 hearing also had to be continued when Ms. Lang sent a communication to the Court approximately an hour before the hearing was to commence, advising that she had a terrible sinus infection that rendered her unable to appear.  In that instance, as well, no physician had been consulted prior to the hearing date.

35. And there is the foregoing, where in every instance, the Defendants have delayed, ignored

and intentionally frustrated, Ace's attempts to enforce its rights under the Agreements.

36. Given these circumstances, the most likely explanation for the McCoys nonappearance at the August 28, 2018 hearing is not injury, but instead more intentional delay and obfuscation. Therefore, the Defendants' failure to comply with the Order Continuing Hearing to September 18, 2018 on Conditions shall be considered as further evidence of the Defendants' civil contempt.

## CONCLUSIONS OF LAW

37. Under 11 U.S.C. § 105(a), bankruptcy courts have the "authority to issue any order necessary or appropriate to carry out the provisions of the bankruptcy code." *Burd v. Walters (In re Walters)*, 868 F.2d 665, 669 (4th Cir. 1989). Thus, they have the "power to impose civil contempt sanctions to coerce compliance with lawful orders." *Souther v. Tate (In re Tate)*, 521 B.R. 427, 439 (Bankr. S.D. Ga. 2014). In determining whether a party has committed civil contempt, bankruptcy courts need only consider "whether the party knew about a lawful order and whether he complied with it." *In re Walters*, 868 F.2d at 670.

38. The Defendants knew of both orders and the evidence presented clearly and convincingly establishes that McCoy and McCoy Motors violated both the June 25 Order and the August 1 Order. *See* Appendix A. The Defendants' failure to appear at the September 18, 2018 hearing further supports the notion that the Defendants have done everything in their power to delay and frustrate effectuation of the two orders. Nothing presented by the Defendants at the September 26, 2018 hearing suggests that they complied, or attempted to comply with either order. In fact, the Defendants presented no documents or corroborating evidence, outside of the Defendants' self-serving and less-than-credible testimony. Furthermore, what little evidence that was presented by McCoy Motors (through counsel) largely focused on proving Ace's noncompliance with the two orders. However, none of the Defendants have filed a motion for contempt against Ace and such

a motion was not on for hearing.  Nonetheless, the Defendants' evidence in that regard was inconsequential.

Based upon the foregoing, the Court concludes that McCoy and McCoy LLC are in civil contempt for their failure to comply with the specific and definite provisions of the June 25 Order and the August 1 Order.  **THEREFORE**:

a. The Contempt Motions are GRANTED as to the Defendants (except Misty McCoy);

b. McCoy and McCoy LLC are held in civil contempt for failing to comply with the June 25 Order and the August 1 Order; as well as the Order Continuing Hearing to September 18, 2018 on Conditions;[8]

c. To purge their contempt, the Defendants shall within **fourteen (14) days** of entry of this Order fully comply with each provision of the June 25 Order and August 1 Order by specifically correcting the deficiencies highlighted in Appendix A attached hereto;

d. That failing, the Defendants shall be fined a sum of **$250 per day** until full compliance with these Orders is forthcoming;

e. Counsel for Ace shall, within **seven (7) days** of entry of this Order file a Declaration detailing Ace's costs and attorney fees reasonably and necessarily incurred in attempting to enforce the June 25 Order and the August 1 Order;

f. Thereafter, the Defendants shall have **seven (7) days** to object to Ace's Declaration of costs and attorney fees, after which the Court will enter a Supplemental Order determining the amount of the allowed costs and attorney's

---

[8] While the Defendants may also be liable for criminal contempt, bankruptcy courts likely do not have the power to sanction criminal contempt.  See *In re Tate*, 521 B.R. at 440.  This is a civil contempt ruling.

fees, which award shall become a part of this Order;

g.  The Defendants shall be afforded an additional **fourteen (14) days** from entry of the Supplemental Order to pay over to Jim Henderson, counsel for Ace, any sums awarded by the Supplemental Order, however, payment of those sums shall be necessary for a final purging of the Defendants' contempt; and

h.  All Defendants shall appear at a compliance hearing on **NOVEMBER 6, 2018** at **9:30 A.M.** before the undersigned at the United States Bankruptcy Court for the Western District of North Carolina, 401 W. Trade Street, Charlotte, North Carolina; any disputes over the costs and fees shall be determined at that hearing as well.

i.  The Defendants are cautioned that should they remain in contempt as of the November 6, 2018 hearing, the Court will impose additional sanctions.  Such sanctions may include, but are not limited to, additional monetary fines, default in this action, and potentially incarceration.  Referral to the United States District Court for criminal contempt purposes, and referral to the US Attorney for potential criminal prosecution may be considered as well.

j.  Given that proceeding with the October 24, 2018 Initial Pre-Trial Conference would be futile at this point, the Initial Pre-Trial Conference is hereby continued to **NOVEMBER 6, 2018**.

**SO ORDERED**.

This Order has been signed                                                      United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

## APPENDIX A

**With respect to June 25, 2018 Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction [Doc. 8]**

**Decretal Paragraph 2.**       "Commencing June 22, 2018, the Debtor (if Debtor receives any such monies or insurance checks and the like) and McCoy LLC shall provide each other with complete, accurate and current data concerning collections of the Vehicle Buyer accounts, on a daily basis, pending further order of this Court.  In order for McCoy LLC to post daily such payments, Debtor must return the access previously provided to McCoy LLC in order for payments to be timely posted to Debtor's servicing account system."

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit A to MOTION FOR ORDER FINDING DEFENDANTS IN CONTEMPT OF JUNE 25, 2018 ORDER CONCERNING INTERIM SERVICING OF ACCOUNTS OF VEHICLE BUYERS [DOC. 8] (the "June 25 Order Motion"), statement of Robin Milestone ("Milestone") that "It appears...only a portion of payments have been posted by dealer on 7/10 and 7/16. Three other dates had minimal postings to 8 accounts".

2. Exhibit B to June 25 Order Motion. Credit card statement showing payments made to Defendant McCoy Motors d/b/a Ride Fast, Milestone testimony at September 25, 2018 hearing was that this was an example of customer payments not posted to customer account by Defendants.

3. Exhibit 32C. July 16, 2018 email: "McCoy only posted payments on 7-10-18, the day before the hearing. Nothing was posted by them to their account between 6-22-18 through 7-9-18, and they haven't posted anything since 7-10-18."

4. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Based on payments of Vehicle Buyers posted by Defendants, Defendants collected $101,517.45 that should have been deposited into escrow. Only $42,898.17 was in fact deposited into escrow, meaning Defendants collected at least $58,619.28 in funds belonging to Plaintiff/Debtor that was not deposited into escrow.

5. Exhibit 32L: Itemization of payments totaling $101,517.45 posted by Defendants that should have been deposited into escrow account controlled by Kris Lang.

6. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Defendants have not provided Plaintiff/Debtor "with complete, accurate and current data concerning collections of the Vehicle Buyer accounts."

**Decretal Paragraph 3**.       "Any payments posted by McCoy LLC for servicing payments of Vehicle Buyers on or after June 21, 2018 shall be paid over to Lang on a daily basis (if received on a daily basis during regular business hours), and shall be held in an escrow account maintained by Lang pending further order of this Court. Lang shall establish a separate bank escrow account ("Lang Escrow Account") solely for the purpose of collecting said monies from McCoy pursuant to this order. Furthermore, if Debtor receives any such monies or insurance checks and the like after June 21, 2018, Debtor shall remit such payments into the Lang Escrow Account."

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32B, as of July 11, Plaintiff/Debtor "still awaiting evidence of 'Lang Escrow Account' and amounts paid to Lang to have been deposited into said account.

2. Exhibit A to June 25 Order Motion, statement of Milestone, "Escrow account was never set up until July 13, 2018"

3. Exhibit 32K. Email from Kris Lang dated August 11, 2018, to which is attached Branch Banking and Trust Co. statement from what purports to be the Lang Escrow Account. This was the first bank statement provided to the Plaintiff/Debtor, and it shows that the Defendants only made deposits into the account on July 16 and July 17, 2018.

4. Testimony of Robin Milestone, September 25, 2018 hearing the Motions: Based on payments of Vehicle Buyers posted by Defendants, Defendants collected $101,517.45 that should have been deposited into escrow. Only $42,898.17 was in fact deposited into escrow, meaning Defendants collected at least $58,619.28 in funds belonging to Plaintiff/Debtor that was not deposited into escrow.

5. Exhibit 32L: Itemization of payments totaling $101,517.45 posted by Defendants that should have been deposited into escrow account controlled by Kris Lang.

**Decretal Paragraph 4**.        "Neither the Debtor nor McCoy LLC, or the employees or agents thereof, will repossess, caused to be repossessed or threaten to repossess the automobile of any Vehicle Buyer, pending further order of this Court."

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32M. Document showing that Defendants repossessed at least one motor vehicle and did not report the repossession to Plaintiff/Debtor or turn the vehicle over to Plaintiff/Debtor.

2. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions, verifying Exhibit 32M.

**Decretal Paragraph 5.**        "McCoy LLC shall by no later than Wednesday, June 27, 2018, provide the Court with a complete, accurate and current accounting of account activity for all Vehicle Buyer accounts since May 1, 2018."

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit A to June 25 Order Motion, statement of Milestone, "This was provided for the time period from 5/1/18-6/26/18.6/27/18- current is still needed and daily going forward."

2. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Accounting has not been provided.

**Decretal Paragraph 8**.        McCoy LLC shall account for any funds from the collection of Vehicle Buyer accounts which are in the possession or control of McCoy LLC as of June 21, 2018 and McCoy LLC shall not spend those funds pending further order of this Court.

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit A to June 25 Order Motion, statement of Milestone, "No bank statements were provided to show amounts of payments held on June 21, 2018."

2. Exhibit 32B. "There was no accounting which funds are in the possession or control of McCoy as of 6/21/18 that shall not be spent."

3. Exhibit 32K. Email from Kris Lang dated August 11, 2018, to which is attached Branch Banking and Trust Co. statement from what purports to be the Lang Escrow Account. This was the first bank statement provided to the Plaintiff/Debtor, and it shows that the Defendants only made deposits into the account on July 16 and July 17, 2018.

4. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions:

5. Testimony of Robert McCoy, Jr. at September 25 hearing: accounts of McCoy Motors, LLC have been closed, no balances.

**With respect to August 1, 2018 Order Granting Motions for Preliminary Injunction and Other Emergency Relief**

The Defendants shall immediately:

**Decretal Paragraph A(i)**    "...stop collecting any payments from Ace's customers/Vehicle Buyers with regard to the motor vehicles and Contracts that constitute collateral under the Agreements and otherwise cease taking any actions whatsoever to exercise servicing rights under the Agreements;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32I. Email from Robert McCoy, Jr. dated August 6, 2018 (five days after entry of August 1 court order) seeking to sell Contracts which are owned by Plaintiff/Debtor.

2. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Sufficient information has not been turned over by McCoy to indicate compliance".

**Decretal Paragraph A (ii)**    "...direct all of Ace's customers and the Defendant's customers to make all payments directly to Ace;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Defendant's customers have not been making payments to AMAC. Defendant has not turned over sufficient information for Ace to collect Defendant's customers [sic]. It's believed that Defendant continues to collect payments from customers."

**Decretal Paragraph A (iii)**    "...turn over any cash or other monies to Ace, including but not limited to payment received from Ace's customers or third parties that are in any way subject to the terms of the Contracts or Agreements;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

21

1. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Based on payments of Vehicle Buyers posted by Defendants, Defendants collected $101,517.45 that should have been deposited into escrow. Only $42,898.17 was in fact deposited into escrow, meaning Defendants collected at least $58,619.28 in funds belonging to Plaintiff/Debtor that was not deposited into escrow.

2. Exhibit 32L: Itemization of payments totaling $101,517.45 posted by Defendants that should have been deposited into escrow account controlled by Kris Lang.

3. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018: "Nothing turned over".

4. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Testified as to his preparation of Exhibit 32N from records supplied by Defendants.

**Decretal Paragraph A (iv)**   "...turn over any vehicles to Ace (including those that have been repossessed) that constitute collateral under the Agreements or related to the Contracts (including all motor vehicles in Defendants' inventory), as well as all titles, accounting records, payment records of Vehicle Buyers, or other documentation associated with each vehicle;"

### *Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32F. Email from Rob McCoy dated August 2, 2018: "*All of Ace Motor Acceptance Corporations employees, share holders, agents and* the *like are hereby on No Trespass Notice per SC State Law from McCoy Motors 3606 Hwy* 51 *Fort Mill, SC* 29715 *and Ride Fast* 1112 *Highway* 9 *Bypass W. Lancaster, SC 29720*

2. Exhibit 32G: Photographs of Defendant's business locations showing access to Plaintiff/Debtor collateral blocked by chains, car, wrecker and limousine.

3. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Defendant produced 2 reports that appear accurate, but incomplete. Follow up requests for individual [Vehicle Buyer] pay histories have been ignored or met with excuses. It is believed that McCoy has sold vehicles to new customers that McCoy has not supplied Ace with the new customer information including bill of sale, retail installment contract, title application....No vehicles or titles have been turned over."

4. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Defendants continue to refuse to turn over automobiles in inventory.

5. Testimony of Robert McCoy, Jr., September 25, 2018 hearing on the Motions. He is keeping over 100 cars locked behind a fence.

6. Exhibit R. Photos showing that the property formerly leased by McCoy Motors now has signs showing it is occupied by "Flash Autos, LLC", which he testified is owned by his 20 year old son. Exhibit V is record from S.C. Secretary of State showing that Robert B. McCoy III is the Registered Agent for Flash Autos, LLC.

7. Exhibit S. Emails concerning Defendants removing inventory, keeping automobile inventory behind locked gates, not turning over inventory to Plaintiff.

8. Exhibit T. Emails from Robin Milestone to McCoy dated August 8, 2018 and September 10, 2018, requesting individual pay histories for each Vehicle Buyer. Milestone testimony was that Defendants have refused to provide this accounting which is necessary to reconcile the Vehicle Buyer accounts.

**Decretal Paragraph A (v)** "...cease communicating with Ace's customers and stop interfering with Ace's efforts to collect on its accounts under the Contracts;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

23

1. Exhibit 32F. Email from Rob McCoy dated August 2, 2018: "All of Ace Motor Acceptance Corporations employees, share holders, agents and the like are hereby on No Trespass Notice per SC State Law from McCoy Motors 3606 Hwy 51 Fort Mill, SC 29715 and Ride Fast 1112 Highway 9 Bypass W. Lancaster, SC 29720"

2. Exhibit 32G: Photographs of Defendant's business locations showing access to Plaintiff/Debtor collateral blocked by chains, car, wrecker and limousine.

3. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Dealer cited No Trespassing after a York County Sheriff's deputy contact [sic] dealer about turning over inventory."

**Decretal Paragraph A (vi)**   "...provide copies of all documents, accounting records and bank statements to Debtor, which are relevant to the location, use and disposition of Ace's collateral;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Nothing turned over. AMAC needs all bank statements and account statements for business with other finance companies".

2. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Confirmed statement in Exhibit 32N concerning failure of Defendants to turn over documents, accounting records and bank statements.

**Decretal Paragraph A (vii**) "...turn over any refunds for GAP protection premiums paid in connection with the Contracts, which have been received or which are received in the future;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Nothing turned over."

24

2. Exhibit S. Documents demonstrating that on August 16, 2018, $1,314.37 check for GAP settlement was issued to Ride Fast GAP. Milestone testimony was that these funds were not turned over to the Plaintiff.

**Decretal Paragraph A (ix)**   "...cease transferring, dissipating, concealing, moving, secreting or otherwise disposing of any assets of Ace or the Defendants, or assets which are collateral of Ace, including the sale of any motor vehicle in Defendants' inventory or possession, or the transfer of any funds or cash by any of the Defendants, pending further Order of the Court;"

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

1. Exhibit 32F. Email from Rob McCoy dated August 2, 2018: "All of Ace Motor Acceptance Corporations employees, share holders, agents and the like are hereby on No Trespass Notice per SC State Law from McCoy Motors 3606 Hwy 51 Fort Mill, SC 29715 and Ride Fast 1112 Highway 9 Bypass W. Lancaster, SC 29720".

2. Exhibit 32I. Email from Robert McCoy, Jr. dated August 6, 2018 (five days after entry of August 1 court order) seeking to sell Contracts which are owned by Plaintiff/Debtor.

3. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Based on payments of Vehicle Buyers posted by Defendants, Defendants collected $101,517.45 that should have been deposited into escrow. Only $42,898.17 was in fact deposited into escrow, meaning Defendants collected at least $58,619.28 in funds belonging to Plaintiff/Debtor that was not deposited into escrow.

4. Exhibit 32L: Itemization of payments totaling $101,517.45 posted by Defendants that should have been deposited into escrow account controlled by Kris Lang.

5. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "It's believed Defendants continue to utilize assets of Ace and continue to sell vehicles".

**Decretal Paragraph A (x)**    "...turn over all keys to any vehicles which are in their control or possession;"

>    *Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance*:

>    Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "Nothing turned over".

**Decretal Paragraph A (xi)**    "...cease any efforts to repossess any motor vehicles and provide Ace with any information (including access information) concerning any GPS devices on all motor vehicles related to the Contracts and/or in the Defendants' inventory;"

>    *Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

>    1. Exhibit 32M. Document showing that Defendants repossessed at least one motor vehicle and did not report the repossession to Plaintiff/Debtor or turn the vehicle over to Plaintiff/Debtor.

>    2. Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "No information to confirm or deny repossessions. Ace has not been provided with any information."

>    3. Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: confirmed statement with respect to repossession information.

**Decretal Paragraph A (xii)**  disclose the location of all of Ace's property or collateral of Ace, including all assets of the Defendants;

>    **Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:**

>    Exhibit 32N. Executed statement of Robin Milestone dated August 10, 2018. "No information has been provided".

**Decretal Paragraph A (xiii)** "...cooperate with Ace in connection with those matters set forth in Paragraph 19 of the Floorplan[9], Paragraph 5 of the PPA[10] and Paragraph 6 of the Servicing Agreement[11];"

### Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:

1. Exhibit 32F. Email from Rob McCoy dated August 2, 2018: "All of Ace Motor Acceptance Corporations employees, share holders, agents and the like are hereby on No Trespass Notice per SC State Law from McCoy Motors 3606 Hwy 51 Fort Mill, SC 29715 and Ride Fast 1112 Highway 9 Bypass W. Lancaster, SC 29720".

2. Exhibit 32G: Photographs of Defendant's business locations showing access to Plaintiff/Debtor collateral blocked by chains, car, wrecker and limousine.

3. Exhibit 32H: Email from Robert McCoy, Jr. dated August 3, 2018, in connection with Plaintiff/Debtor's attempts to collect amounts owed under Contracts owned by Plaintiff/Debtor, stating "...it is our understanding that Mr. Milestone has violated

---

[9] Agreement for Line of Credit ("Floorplan") (attached to Complaint as Exhibit B), Paragraph 19 provides in part that upon default by Defendants and failure to cure, Plaintiff/Debtor "(c)..shall have and may exercise all of the rights and remedies granted to a secured party under the Uniform Commercial Code as adopted by the State of North Carolina and all of the rights and remedies under any other applicable law;....(e) ...may proceed with or without judicial process or notice to [Defendants] to take possession of all or any part of the collateral not already in possession of [the Plaintiff/Debtor], and [Defendants] shall do everything necessary to make the Collateral available to [Plaintiff/Debtor] (including, without limitation, assembling the Collateral and making it available to [Plaintiff/Debtor] at a place designated by [Plaintiff/Debtor]...".

[10] BHPH Purchasing & Performance Agreement (attached to Complaint as Exhibit A), Paragraph 5 provides in part that in the event of default, the Plaintiff/Debtor "..shall have any and all remedies available to it at law or in equity, as well as those remedies set forth in the Agreement and the Servicing Agreement".

[11] BHPH Contract Servicing Agreement (attached to Complaint as Exhibit C), Paragraph 6 provides in part that upon default, Plaintiff/Debtor may "...take over all servicing rights of [Defendants] to all Contracts..", and the Defendants "...shall notify all Vehicle Buyers in writing that such Vehicle Buyer must make payment of all amounts owed pursuant to their respective Contracts directly to [Plaintiff/Debtor]."

27

FDCPA 805(b) numerous times today. He and all other Ace associates are to Cease and Desist immediately or legal action will be taken".

4.  Exhibit 32I. Email from Robert McCoy, Jr. dated August 6, 2018 (five days after entry of August 1 court order) seeking to sell Contracts which are owned by Plaintiff/Debtor.

5.  Exhibit 32J. Copy of August 22, 2018 letter from North Carolina Department of Justice ("NCDOJ"), in response to complaint of Robert McCoy, Jr. concerning the Plaintiff/Debtor. The Complaint seeks a determination that the Plaintiff/Debtor owes Robert McCoy, Jr. $1,450,000.00, and falsely alleges that the facts alleged in the Complaint had not been "heard in court". All of the facts alleged in the NCDOJ Complaint were in fact argued by the Defendants and denied by this Court.

6.  Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "No attempt has been made to comply".

7.  Testimony of Robin Milestone, September 25, 2018 hearing on the Motions: Confirmed statement in Exhibit 32N.

**Decretal Paragraph B**.        "Any payments received, whether related to the Contracts owned by Ace or McCoy LLC shall be forwarded to Ace within no more than 24 hours of receipt."

*Plaintiff/Debtor's Evidence demonstrating Defendants' Non-Compliance:*

Exhibit 32N, Executed statement of Robin Milestone dated August 10, 2018. "No payments have been forward [sic]".

FILED & JUDGMENT ENTERED
Steven T. Salata

December  27  2018

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | **Chapter 11** |
| | ) | **Case No. 18-30426** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| **Ace Motor Acceptance Corporation,** | ) | |
| | ) | |
| **Plaintiff.** | ) | |
| | ) | **Adversary Proceeding** |
| v. | ) | **No. 18-03036** |
| | ) | |
| **McCoy Motors, LLC;** | ) | |
| **McCoy Motors, LLC, d/b/a Ride Fast;** | ) | |
| **Robert McCoy, Jr.; and Misty McCoy** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ——————————————— | ) | |

## SUPPLEMENTAL ORDER
### (TO NOVEMBER 21, 2018 ORDER RECOMMENDING WITHDRAWAL OF REFERENCE OF ADVERSARY PROCEEDING FOR FURTHER CIVIL, AND POTENTIALLY CRIMINAL, CONTEMPT PROCEEDINGS)

**ON NOVEMBER 21, 2018** the undersigned entered an order recommending that the U.S.

District Court withdraw reference[1] of this Adversary Proceeding in its entirety for the purpose of

---

[1] Pursuant to 28 U.S.C. 157(d).

undertaking further civil contempt proceedings and potentially initiating criminal contempt proceedings against Defendants, McCoy Motors, LLC ("McCoy Motors") and Robert McCoy, Jr. ("McCoy") and to consider entry of default against these defendants (the "Recommended Order") (Docket no. 104). That recommendation is pending before the Hon. Robert Conrad, U.S. District Judge.

Since entry of the Recommended Order, further hearings have taken place in bankruptcy court. Specifically, on December 18, 2018 an evidentiary hearing was conducted on the following matters:

1) Ace Motor Acceptance Corporation's ("Ace"), Motion for Order Granting Leave to File Second Amended Complaint to Add Parties and Additional Causes of Action; (Docket no. 99);

2) Ace's Motion for Order Appointing Receiver for McCoy Motors, LLC and Flash Autos, LLC (Docket no. 107);

3) McCoy's Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver (Docket no. 123);

4) Ace's Motion for Order Striking "Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver" [Doc. 109] and Imposing Sanctions on Robert McCoy, Jr. for Continued Violations of North Carolina Statutes and Local Rules Pertaining to Unauthorized Practice of Law (Docket no. 111);

5) McCoy's Motion for Order to Dismiss/Remove James Henderson as Plaintiffs/ Debtors Attorney, Refer James Henderson to the US Attorney for Perjury and NC Bar for Violation of Rules of Professional Conduct Request for Hearing Date of December 18, 2018 (Docket no. 122);

6) Ace's Motion for Order Striking Pro Se Objection by Robert McCoy to McCoy Motors, LLC Subpoena; Motion for Order Holding Robert McCoy in Further Contempt of Court Pursuant to Bankruptcy Rule 9016 and Rule 45(g) of the Federal Rules of Civil Procedure, Compelling Compliance and Requiring the Payment of Fees and Costs; Request for Emergency Hearing (the "McCoy Contempt Motion") (Docket no. 139);

7) Ace's Motion for Order Finding Robert McCoy III in Contempt of Court Pursuant to Bankruptcy Rule 9016 and Rule 45(g) of the Federal Rules of Civil Procedure, Compelling Compliance and Requiring the Payment of Fees and Costs; Request for Emergency Hearing (the "McCoy III Contempt Motion") (Docket no. 140);

8) Kristin Harmon Lang's Motion to Withdraw as Attorney for McCoy Motors, LLC, McCoy Motors, LLC D/B/A Ride Fast, Rob McCoy and Misty McCoy (Docket no. 144).

Plaintiff, Ace, appeared at the December 18, 2018 hearings through counsel and presented evidence in support of its positions.  Misty McCoy and McCoy Motors likewise appeared through counsel.  McCoy appeared pro se.  Robert McCoy III ("McCoy III") and Flash Autos, LLC ("Flash") did not appear.

Bench orders were announced during these hearings granting some of the motions, denying others, and taking a third group under advisement, including the motion to appoint a receiver.[2]

---

[2] **Granted**: Ace's Motion for leave to amend its complaint.  **Denied**: 1) McCoy's Motion for Dismissal and Opposition to December 18, 2018 Hearing and Appointment of Receiver (lack of standing); 2) McCoy's Motion for Order to Dismiss/Remove James Henderson as Plaintiffs/ Debtors Attorney, Refer James Henderson to the US Attorney for Perjury and NC Bar for Violation of Rules of Professional Conduct Request for Hearing Date of December 18, 2018; 3) Ace's Motion for Order Striking "Motion for Dismissal and Opposition to the December 18, 2018 Hearing and the Appointment of Receiver" [Doc. 109] and Imposing Sanctions on Robert McCoy, Jr. for Continued Violations of North Carolina Statutes and Local Rules Pertaining to Unauthorized Practice of Law.  **Under Advisement**: 1) Ace's Motion for Order Appointing Receiver for McCoy Motors, LLC and Flash Autos LLC; 2) that portion of Ace's Motion for Order Striking McCoy's Motion to dismiss, etc. seeking sanctions against McCoy for the unauthorized practice of law; 3) Ace's McCoy Contempt Motion; and 4) Ace's McCoy III Contempt Motion.  **Continued**: Attorney Lang's Motion to Withdraw.

3

Written Orders are currently being prepared and will be entered as quickly as possible.

That said, the evidence presented during these hearings provides new facts (and corrects several previously misrepresented facts) concerning post injunction actions taken by McCoy, Misty McCoy, and McCoy Motors (the "Defendants") in derogation of Ace's rights as a property owner and/or a secured creditor and this Court's orders.  The undersigned believes it should summarize what was gleaned from these latest hearings for the benefit of the U.S. District Court in considering withdrawal of reference, and potential next steps in the proceeding if reference is withdrawn.

## PRIOR PROCEEDINGS

Prior proceedings in this action which led to McCoy and McCoy Motors being held in civil contempt are detailed in several orders: 1) Order Concerning Interim Servicing of Accounts of Vehicle Buyers; and Order Setting Hearing on Preliminary Injunction (the "June 25 Order") (Docket no. 8); 2) the Order Granting Motions for Preliminary Injunction and Other Emergency Relief (the "August 1 Order") (Docket no. 26); 3) the Order Finding Certain Defendants in Civil Contempt and Continuing Pretrial Conference (the "Contempt Order"); and last, 4) the Recommended Order (collectively, the "Orders").

In sum, this is a UCC foreclosure and collection action by Ace, a floorplan lender, against its borrower, McCoy Motors.  Having been thwarted in its post default efforts to recover its property/collateral, Ace filed suit.  What makes this proceeding unusual and procedurally difficult is the fact that the action was not brought in South Carolina state court, where McCoy Motors is located, but rather in the Western District of North Carolina—in the bankruptcy court in which Ace is a Chapter 11 Debtor in Possession.

After the action was filed, Ace quickly sought injunctive relief to secure its

4

property/collateral.  The parties agreed to a consent order, the June 25 Order, that was intended to preserve the status quo pending a preliminary injunction hearing.  That consent order kept McCoy Motors in possession of the underlying property and allowed McCoy Motors to continue to collect customer accounts, but it also required the Defendants to preserve the property, account for the same, and to escrow collections.  Unfortunately, the Defendants made little or no effort to comply with the June 25 Order.  As a result, and after a further evidentiary hearing, the August 1 Order was entered—a mandatory, preliminary injunction.  The August 1 Order awarded Ace possession of the underlying property pending trial (subject to a requirement to preserve the assets, account for the same, and escrow collections) and terminated McCoy Motors' right to collect the customer accounts.

Again, the Defendants failed to comply with the August 1 Order.  Among many things, they prevented Ace from entering McCoy Motors' premises to obtain possession of its vehicle inventory, they continued to repossess cars and collect payments from customers and secreted the same, they made no effort to provide any accounting, and they undertook efforts intended to give the impression that McCoy Motors had gone out of business.  According to the Defendants' testimony, shortly after the August 1 Order was entered, McCoy Motors closed, sent its records to the South Carolina Department of Motor Vehicles, surrendered possession of its location to the landlord, and was now defunct.  The Defendants maintained that a new and entirely independent entity, Flash, was now operating at the site.  While Ace demonstrated that Flash was a newly formed business owned by the McCoy's 20-year-old son, McCoy III, a college student, the Defendants maintained that they were not involved in its formation and were entirely ignorant of its business affairs.  The Defendants' contentions in this regard were incredible and were rejected. It appeared that Flash was a sham.

McCoy and McCoy Motors were held in civil contempt for failing to comply with the June 25 Order and the August 1 Order; as well as the Order Continuing Hearing to September 18, 2018 on Conditions.  However, Defendant Misty McCoy was not held in civil contempt.  Both McCoy and Misty McCoy testified at the contempt hearing that Misty McCoy was not an active employee of McCoy Motors and was not a participant in any of these matters.  Lacking access to McCoy Motors' premises and records, Ace was unable to prove otherwise.

The contempt hearing was followed by a purge hearing on November 6, 2018.  On that date, McCoy and McCoy Motors had not in any way purged themselves of their contempt.  Thus, the undersigned bankruptcy judge entered the November 21, 2018 Recommended Order—it appearing that nothing less than incarceration of McCoy for civil contempt would secure compliance with the undersigned's prior orders.[3]  It further appeared that these parties were also guilty of criminal contempt.[4]

Meanwhile, the present motions were joined and scheduled for hearing in bankruptcy court on December 18, 2018.  Notably, Ace now asks that a receiver be appointed for McCoy Motors and Flash.

Seeking testimony and documentation to support its motions, Ace served subpoenas and subpoenas duces tecum upon McCoy Motors, McCoy III/Flash and others.  (Docket nos. 116 and 119).  None of the parties subpoenaed sought protection from the subpoenas.  McCoy did attempt to quash the subpoenas and to force a continuance of the December 18, 2018 hearings.  However, McCoy was not a subject of the subpoenas, he did not assert any interest or privilege in the same,

---

[3] Although bankruptcy judges have civil contempt powers, including the power to arrest recalcitrant parties to secure compliance with their orders, the longstanding local district practice has been to address such matters in U.S. District Court

[4] It is generally understood that bankruptcy judges do not possess criminal contempt powers.  *See Souther v. Tate (In re Tate)*, 521 B.R. 427, 440 (Bankr. S.D. Ga. 2014).

and as McCoy Motors is an incorporated business represented by counsel, he was not able to object on its behalf.  In any event his objections were without merit and were overruled.

Two of the subpoenaed parties, McCoy Motors and McCoy III failed to respond to the subpoenas.  Neither produced any of the requested documents or information.  McCoy Motors appeared at this latest hearing but offered no excuse for its failure to respond to its subpoena. McCoy III/Flash did not appear at the December 18, 2018 hearings.  Accordingly, both are subject to civil contempt and discovery sanctions for failing to obey the subpoenas without adequate excuse.  Fed. R. Civ. P. 45(g).

### SUPPLEMENTAL FINDINGS AND CONCLUSIONS

In spite of these failures to respond to valid subpoenas, Ace was able to present evidence at the December 18, 2018 hearing which demonstrated that McCoy and McCoy Motors remain in contempt of this Court's orders.  In fact, the new evidence confirmed that all of the Defendants have been engaged in, and are still embarked on, a wholesale effort to secret and convert Ace's property/collateral.  Notably, Ace presented the testimony of a former employee of McCoy Motors and Flash, Austin Robertson ("Robertson").  Robertson was a credible witness with personal knowledge of the actions of McCoy, Misty McCoy, McCoy Motors, McCoy III, and Flash during the times in controversy.  Defendants did little, if anything, to refute Robertson's sworn testimony, and on this occasion offered no witness testimony in their own in defense of Ace's motions.

Robertson's testimony confirms that McCoy and Misty McCoy perjured themselves on numerous occasions at the September 26, 2018 and November 6, 2018 hearings.  It also indicates that the Defendants' prior representations about their efforts to comply with the aforementioned injunctions and contempt orders were false.  The following facts are now clear:

1. The Defendants have, and continue to, conceal and dispose of Ace's collateral in

contravention of this Court's orders.  During the pendency of this proceeding, McCoy and Misty McCoy continued to collect car payments from customers, but would only accept cash or money orders from McCoy Motors customers so that no "money trail" was created.

2. Additionally, McCoy directed Robertson to move vehicles (Ace's collateral) behind a locked fence.  McCoy further hid or attempted to hide an additional 50 vehicles at other locations. Finally, McCoy instructed Robertson and other McCoy Motors employees to remove valuable parts from McCoy Motors' vehicles in order to use them to repair and improve Flash's vehicles.

3. McCoy went on a spending spree in order to create the appearance that neither McCoy nor McCoy Motors had any money or assets.  McCoy recently paid Robertson to do substantial work on his home and purchased three ATV's, a UTV, two Harley Davidson motorcycles, a Tahoe, a Camaro, a BMW, and a boat.  Previously McCoy had advised this Court that he was without income.  He did not explain how he was able to make such weighty purchases given his alleged financial extremity.

4. On September 26, 2018, McCoy and/or Misty McCoy testified that: 1) Misty McCoy was not an employee of McCoy Motors or Flash; 2) Misty McCoy was unemployed as of the time of the September 26, 2018 hearing; 3) Misty McCoy did no accounting work for McCoy Motors; and 4) Misty McCoy was not privy to the day to day transactions of McCoy Motors.  Contrary to those statements, from Robertson's testimony it now appears that Misty McCoy was a 30 hour per week employee of McCoy Motors and a direct participant in the events that caused McCoy and McCoy Motors to be held in civil contempt.

5. With respect to McCoy Motors and Flash Autos, Robertson's testimony about his own involvement in the two entities demonstrates that Flash is but a continuation of McCoy Motors under another name.  Robertson first worked for McCoy Motors under McCoy's direction.

Robertson continued to work, without disruption, after the alleged close of McCoy Motors, but for Flash, again at McCoy's command.  Robertson did repo work and sold cars on behalf of Flash, despite the fact that he never filled out employment forms for Flash.  Similarly, Robertson continued to do repo work on behalf of McCoy Motors during the same time period, even though McCoy previously testified to the contrary.  Essentially the same employees remained at Flash as had worked at McCoy Motors.  The only significant change in Robertson's employment, apart from differing operating hours, was that as a Flash employee, he no longer received direct deposit payments for his work.  Rather, he was paid by endorsing a check given to him by either McCoy or Misty McCoy, returning the endorsed check to McCoy or Misty McCoy, and then McCoy or Misty McCoy would pay Robertson in cash—he was never paid by McCoy III or Flash Autos.

6. In contrast to the two McCoy's prior testimony that they had nothing to do with Flash, Robertson testified that McCoy helped McCoy III create Flash; that McCoy is present at the business on a daily basis; that McCoy maintains the same office there today as he did when McCoy Motors was operating; and that McCoy advises his son on Flash's business operations, including approving its business deals.  Meanwhile, Misty McCoy currently works for Flash in the same capacity that she did for McCoy Motors.  She too aided McCoy III in creating Flash, providing the credit card to purchase and helping Robertson pick out the paint by which he repainted McCoy Motors' location for use by Flash.

7. At the November 6, 2018 hearing, an issue arose of whether the Defendants had attempted to intimidate Ace and its counsel by use of a Facebook account purporting to be a woman named "Amanda Small."  Ace contended that the Defendants had used this Facebook account to post disparaging references about Ace and its counsel, including an attempt to "friend" Mr. Henderson's children so as to further the disparagement.  On that occasion McCoy testified and

9

denied knowing anything about any such Facebook account. He further denied creating any Facebook posts regarding the parties/counsel to this proceeding. However, at the December 18, 2018 hearing, Robertson confirmed that McCoy regularly used a fake Facebook account under the name "Amanda Small" in the course of McCoy Motors' business. The account was employed to "find cars and trick the customer" such that their cars could be repossessed. Robertson further testified that McCoy created a Facebook post about an Ace employee. Thus, it now appears that Defendants McCoy Motors and McCoy were in fact reprehensibly employing the Small Facebook page in an effort to embarrass and intimidate Ace and its Counsel.

### SUPPLEMENTAL CONCLUSIONS AND FURTHER RECOMMENDATIONS

It is now clear that Flash is one and the same as McCoy Motors. Further, McCoy, Misty McCoy, and McCoy Motors are actively transferring, dissipating, concealing, moving, and disposing of the property at issue in this action and are being aided in these endeavors by their son, McCoy III and Flash. Additionally, it appears McCoy and Misty McCoy have perjured themselves in this action.

Previously, Misty McCoy appeared not to be complicit in these untoward actions. Robertson's testimony demonstrates that this conclusion was erroneous, founded on false testimony, and should be reconsidered. As an active participant in these misdeeds, Misty McCoy should be included in the civil contempt citation previously made against the other defendants; further, she too should be included in any criminal contempt charges.

Given these continued activities of Defendants to defeat Ace's rights as an owner of accounts and a secured lender of the Defendants with a blanket lien on their assets, it is paramount that prejudgment remedies be employed to preserve these assets pending trial. Purely on factual grounds, cause exists to appoint a receiver for the Defendant corporations.

However, as the follow-on decision on the receivership motion will explain in greater detail, there are jurisdictional and procedural difficulties in providing this relief in federal court—especially in a bankruptcy court. The Federal Bankruptcy Rules, which govern this action, do not contain an analogue to Rule 66 of The Federal Rules of Civil Procedure, the federal receivership rule. Thus it has been held that a bankruptcy court may not appoint a federal receiver. *See Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 873 (Bankr. N.D. Ill. 2006).

7. As *Teknek* explains, there is an analog to FRCP 64 found in FRBP 7064, which permits a federal court sitting in bankruptcy to exercise any prejudgment remedies provided under the law of the state where the federal court sits. *Id.* at 871. In this case that would mean employing North Carolina prejudgment remedies, including state receivership, in South Carolina. The weight of authority suggests that such state prejudgment remedies may not be exercised across state lines. *See* C.J.S., Attachment § 100 ("[T]he court cannot attach property which is not within the territorial limits of its jurisdiction.") *See also, Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 1965 A.M.C. 234, 12 A.L.R.3d 1081 (2d Cir. 1965) (Account in bank branch in Southern District of New York is outside jurisdiction of U.S. District Court for the Eastern District of New York); *Limonium Maritime, S.A. v. Mizushima Marinera, S.A.*, 961 F. Supp. 600, 606, 1997 A.M.C. 2938 (S.D. N.Y. 1997) ("[F]or … attachment to be appropriate, it is clear that the property must be located within the district…") (emphasis in original). *Accord Allied Maritime Inc. v. Descatrade SA*, 2010 A.M.C. 1949, 2009 WL 4884160 (S.D. N.Y. 2009), order aff'd, 620 F.3d 70, 2011 A.M.C. 54 (2d Cir. 2010). McCoy Motors and most of the property at issue is located in South Carolina.

8. There may be an ability to appoint a receiver under these egregious facts under the U.S. District Court's supplemental jurisdiction pursuant 28 U.S.C. § 1367. Receivership is after all an

ancillary proceeding. However, the weight of authority suggests that bankruptcy courts do not possess supplemental jurisdiction.

9. By contrast, federal <u>injunctive</u> relief appears to be available under federal law of equity and under FRBP 7065.  As noted, this is essentially an action by a secured creditor to obtain possession of and to liquidate its collateral.  However, freeze orders can be authorized under Rule 65 in suits at equity or where the plaintiff has a security interest in the property at issue. *See Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 158 (1st Cir. 2004); *see also U.S. ex rel. Rahman v. Oncology Associates*, 198 F.3d 489, 496–497, 45 Fed. R. Serv. 3d 131 (4th Cir. 1999).

10. Of particular importance, under facts like those presented, a secured lender is entitled to a mandatory injunction to require the borrower to gather its collateral and to "freeze" the same. *See Clark Equipment Co. v. Armstrong Equipment Co.*, 431 F.2d 54, 7 U.C.C. Rep. Serv. 1249 (5th Cir. 1970) (Where state law authorized and the security agreement required the debtor, on default, to assemble and make available to the creditor property subject to a lien, the federal court had jurisdiction to grant mandatory injunction directing defaulting debtor to assemble equipment and other property subject to security agreement, even though it was situated in several states, and make it available to creditor; creditor was not required to resort to state remedy of detinue.)

11. Obviously, the Defendants have not been deterred by this bankruptcy courts' prior injunctive orders, nor its order imposing financial sanctions for civil contempt.  Given the limited options, it would appear that incarceration of McCoy would be a next, necessary step to obtain compliance.

12. Consequently, the undersigned recommends that reference of this adversary proceeding be withdrawn in its whole, that further proceedings be conducted on an expedited basis, and that

Misty McCoy be included with the other Defendants in any contempt proceedings.

**SO ORDERED**.

This Order has been signed                                    United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.