IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:19-CR-00035

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff,** v. ROBERT MCCOY JR., **Defendant.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion for Recusal. (Doc. No. 29). Defendant seeks recusal of the undersigned in his criminal contempt trial under the Due Process Clause, 28 U.S.C. § 455(a), and 28 U.S.C. § 455(b)(1). After careful review of the Motion, the parties' briefing, and the record, the Court finds that neither the Constitution nor 28 U.S.C. § 455 requires the Court to recuse itself in this case.

## I. RELEVANT BACKGROUND

This criminal case stems from Defendant's conduct in an adversarial bankruptcy proceeding. Bankr. Case No. 18-03036; Dist. Case No. 3:18-CV-630-KDB. Ace Motor Acceptance Corporation ("Ace") filed its complaint initiating the adversarial proceeding seeking to recover property after Defendant's breach of contract. In an effort to maintain the status quo, the bankruptcy court entered two preliminary injunction orders—the June 25, 2018 order and the August 1, 2018 order—in the adversary proceeding. After the issuance of these orders, Ace filed a motion asking that Defendant be held in civil contempt for failure to comply with the bankruptcy court's orders. The bankruptcy court held a hearing on Ace's motion where evidence of Defendant's non-compliance with the orders was presented. The bankruptcy court issued a written

1

order finding Defendant in civil contempt. The contempt order described Defendant's failure to comply with the two injunction orders issued by the bankruptcy court, Defendant's frivolous filings of state claims that included false allegations against Ace and Ace's counsel, the likely perjury committed by Defendant, and Defendant's failure to appear for a court date. No. 3:18-CV-630-KDB, Doc. No. 1-1. The contempt order scheduled a hearing where Defendant was given the opportunity to show that he purged his civil contempt. However, at this hearing, the bankruptcy court found that the "evidence reflects that the Defendants have not in any way purged themselves of their contempt; nor have they made any effort to do so." No. 3:18-CV-630-KDB, Doc. No. 1, at 5. On November 21, 2018, the bankruptcy court filed an order recommending the District Court withdraw the reference of the adversarial proceeding for further civil, and potentially criminal, contempt proceedings. No. 3:18-CV-630-KDB, Doc. No. 1. A month later, the bankruptcy court filed a supplemental order to its recommendation to withdraw the reference outlining further contemptuous conduct by the Defendant. No. 3:18-CV-630-KDB, Doc. No. 2. On February 5, 2019, the Honorable Robert Conrad issued an order withdrawing the reference of the adversary proceeding and issued an order requesting that the United States Attorney for the Western District of North Carolina prosecute and conduct a criminal investigation regarding the fraudulent and perjurious conduct of Defendant. (Doc. No. 3).

On May 23, 2019, McCoy and the government entered into a Pretrial Diversion Agreement providing that the prosecution of Defendant for criminal contempt would be deferred for six months or until the termination of the civil case, whichever is later, but in no event longer than 18 months. This agreement provided various terms and conditions with which Defendant was required to comply. One such condition was compliance with future court orders. If Defendant violated any of these conditions, "the United States Attorney may revoke or modify any conditions of th[e]

2

pretrial diversion program" and "may at any time within the period of [Defendant's] supervision initiate prosecution for this offense."

Proceedings in the civil action, No. 3:18-CV-630-KDB, continued and Defendant was ordered to show cause as to whether he remained in violation of the bankruptcy court orders. No. 3:18-CV-630-KDB, Doc. Nos. 34, 60. After finding that Defendant had failed to purge his contempt, and after a finding that Defendant had failed to comply with this Court's order to disclose certain financial information, this Court issued an order referring the matter a second time to the United States Attorney's office for criminal prosecution and investigation into Defendant's conduct. No. 3:18-CV-630-KDB, Doc. No. 71. Rather than open a new criminal case, the government filed a motion to lift the stay in the already existing criminal case against Defendant. No. 3:19-CR-00035. The government's grounds for lifting the stay was this Court's finding that Defendant had failed to comply with the Court's orders to file certain financial information. Defendant opposed the government's motion, arguing that he had fully complied with, most of, the Pretrial Diversion Agreement. This case was transferred to the undersigned on February 6, 2020. This Court then granted the government's motion and lifted the stay. A bench trial was scheduled for March 9, 2020.[1] Defendant subsequently filed this motion for recusal. (Doc. No. 29). The government responded, arguing that Defendant has not shown sufficient grounds for recusal. (Doc. No. 31). Defendant filed his reply on February 24, 2020 and this matter is now ripe for decision. (Doc. No. 32).

---

[1] The parties have been informed that the Court will not impose a sentence of more than six months imprisonment. Pursuant to *Bloom v. Illinois*, 391 U.S. 194 (1968), a defendant is not entitled to a jury trial under the Constitution for "petty" contempt proceedings where possible imprisonment does not exceed six months.

3

## II. DISCUSSION

Defendant requests recusal arguing that "the procedural chronology of this case gives the appearance that [Defendant's] guilt of the criminal contempt has already been decided against him by this Honorable Court." (Doc. No. 29, at 1). Defendant points to language contained in the order referring the matter to the United States Attorney's office for prosecution as evidence that this Court has already decided Defendant's guilt of criminal contempt. The government asserts that neither provision of 28 U.S.C. § 455 supports a determination of recusal. Defendant filed a reply asserting that his motion raised constitutional arguments for recusal, in addition to statutory arguments under 28 U.S.C. § 455.

The Fourth Circuit has recently addressed how to analyze when recusal is required under the Constitution and federal statutes: "As an initial matter, it is helpful to disentangle two related—but distinct—threads of law governing judicial recusal. Recusal may be required under either the Due Process Clause or federal recusal statutes." *United States v. Richardson*, No. 17-4760, 2019 WL 6769752, at *7 (4th Cir. Dec. 12, 2019). "[T]he 'Due Process Clause demarks only the outer boundaries of judicial qualifications.'" *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009)). "In fact, most recusal questions are 'answered by common law, statute, or the professional standards of the bench and bar.'" *Id.* (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). "So though 'there may certainly be areas' where constitutional and statutory requirements overlap, a statutory violation 'does not automatically mean the defendant was denied constitutional due process.'" *Id.* at *7-8 (quoting *Davis v. Jones*, 506 F.3d 1325, 1336 (11th Cir. 2007)). In accordance with Fourth Circuit precedent, the Court will consider the constitutional recusal issue before turning to statutory recusal.

4

### A. Recusal Under the Due Process Clause

The Due Process Clause requires recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The question turns "not [on] whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias." *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal quotations omitted).

"[M]ost matters relating to judicial disqualification [do] not rise to a constitutional level." *Caperton*, 556 U.S. at 876. It is the "extraordinary situation where the Constitution requires recusal." *Id.* at 887; *Rowsey v. Lee*, 327 F.3d 335, 341 (4th Cir. 2003) ("In order to prevail in a deprivation of due process claim, a defendant must show a level of bias that made 'fair judgment impossible.'"). The Fourth Circuit has discussed what types of situations may require recusal under the Due Process Clause:

> These situations may be largely categorized as instances when an extraordinary financial interest exists between a judge and a litigant, *see, e.g.*, *Caperton*, 556 U.S. at 884 (requiring recusal of elected state court judge in case involving corporation whose CEO had contributed about $3 million to judge's election campaign following lower court's entry of $50 million judgment against corporation when it was likely that corporation would seek review in state supreme court), when a judge acts as a significant part of the accusatory process before presiding over the accused's trial, *see, e.g.*, *Williams*, 136 S. Ct. at 1903 (requiring recusal of judge before whom defendant appeared seeking relief from a death sentence where the judge had, as district attorney, given approval to seek death penalty against defendant); *In re Murchison*, 349 U.S. 133, 136 (1955) (requiring recusal of judge when judge acts as a "one-man grand jury" by hearing testimony qua grand jury, presiding over contempt hearing of grand jury witnesses qua judge, and holding grand jury witnesses in contempt for their conduct before judge qua grand jury), or when a judge is involved in a running, bitter controversy with a litigant, *see, e.g.*, *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971) (requiring recusal of judge in a litigant's contempt trial when that litigant continuously, "cruelly slandered" the judge).

5

*Richardson*, 2019 WL 6769752, at * 8-9.

The present case does not present such an extraordinary situation. There is no actual or apparent financial interest between the parties and undersigned. Nor is there indication that the undersigned is embroiled in a running, bitter controversy with Defendant. Indeed, Defendant does not argue that such a controversy exists and points to no evidence in the record that would amount to such. Even if any remarks allegedly exhibiting such a controversy existed in the record, they are better characterized as "expressions of impatience, dissatisfaction, annoyance, and even anger" that are within the bounds allowed by the Supreme Court. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

Defendant argues that the undersigned must recuse himself under the Supreme Court's holding in *In re Murchison*, 349 U.S. 133. However, *Murchison* is plainly distinguishable from this action. In *Murchison,* witnesses testified in front of the judge in "secret hearings" where the judge questioned the witnesses about gambling and bribery in the Detroit police department. *Id.* at 134-35. One witness's answers left the judge persuaded that he had committed perjury, and the other witness refused to answer the questions on the grounds that he was entitled to counsel under Michigan law. *Id.* The judge charged both witnesses with criminal contempt. *Id.* The judge then tried both witnesses in open court and "convicted and sentenced them for contempt." *Id.* at 135. In its decision ruling that this process was unconstitutional, the Supreme Court emphasized that the judge had been a part of the accusatorial process and could not divorce himself from that role. Unlike the situation here, the grand jury proceedings in *Murchison* were secret proceedings such that no witnesses were available that could contradict the judge's recollection. The alleged bias stemming from a judge's interest in enforcing court orders is not the type of "interest in the outcome" proscribed by *Murchison*. *See Herring v. Stevenson*, No. CA 0:11-160-MBS-PJB, 2012

WL 952855, at *29 (D.S.C. Mar. 19, 2012). Thus, constitutional due process concerns do not require the undersigned's recusal in this case.

### B. Recusal Under 28 U.S.C. § 455

Defendant also moves for recusal under 28 U.S.C. §§ 455(a) and (b)(1). A judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Nicholas v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). Section 455(a) provides that disqualification is necessary "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) provides that a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

Section 455 does not demand recusal because of "unsupported, irrational, or highly tenuous speculation" because that would result in litigants "exercise[ing] a negative veto over the assignment of judges." *United States v. DeTemple*, 162 F.3d 279, 287 (4th Cir. 1998). The standard for disqualification under section 455 is "whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." *United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003). However, as the Supreme Court has explained:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky*, 510 U.S. at 555; *see also Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011) ("[J]udicial rulings and 'opinions formed by the judge on the basis of facts introduced or events occurring in

7

the course of the current proceedings, or of prior proceedings' almost 'never constitute a valid basis for a bias or partiality motion.'" (quoting *Liteky*, 510 U.S. at 555)); *United States v. Allen*, 587 F.3d 246, 252 (5th Cir. 2009) (holding that the district court did not prejudge criminal contempt charges against defendants, as would have warranted recusal, when, during prior civil proceedings, the district court stated that defendants had violated the court's orders to show cause and that defendants were likely in criminal contempt). This "extrajudicial source" limitation applies to both section 455(a) and 455(b)(1). *Belue,* 640 F.3d at 573.

Defendant argues this Court has already decided that probable cause exists to prosecute him for criminal contempt and that such is "inconsistent with the presumption of innocence." (Doc. No. 29, at 4). A finding of probable cause is not inconsistent with the presumption of innocence. A finding of probable cause is not a finding that the elements of criminal contempt have been proved beyond a reasonable doubt. Criminal contempt requires a showing that a defendant "willfully violated a decree that was clear and left no uncertainty in the minds of those that heard it." *In re Gates*, 600 F.3d 333, 338 (4th Cir. 2010). Defendant is not guilty of criminal contempt unless and until all elements of criminal contempt are proven beyond a reasonable doubt. This Court's finding that probable cause exists amounts to an observation that court orders have likely been violated, and other elements of criminal contempt remain to be proven. *See generally Young v. U.S. ex rel Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987) (stating that "it is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders"); *Allen,* 587 F.3d at 253 ("As to the [judge's] statements that the Allens 'violated' the orders to show cause, the district court merely made a correct factual observation.").

Next, Defendant cites to language in the Court's referral to the United States Attorney's office as evidence that this Court has prejudged the matter. Specifically, Defendant points to two

8

statements by this Court. The first statement reads as follows: "the Court will refer this matter to the United States Attorney's office—for a second time—for criminal prosecution and investigation into McCoy and Misty McCoy's perjurious and fraudulent conduct." The second statement is: "You are advised that the essential facts constituting such criminal contempt are contained in . . . [the] documents which accompany this Order." These statements must be read in the context of the referral itself, which is directed towards a standard of probable cause. The language does not reflect that the undersigned has already prejudged the case. Rather, the language reflects the Court's determination that probable cause exists for the United States Attorney to prosecute. The Court's order referring Defendant for criminal prosecution and identifying the essential facts constituting such criminal contempt is in accordance with the notice requirements set forth in Federal Rule of Criminal Procedure 42(a)(1)(C). As the government points out in its response to Defendant's motion, "the language from this Court's order that Defendant highlights in his motion as meriting recusal represents nothing more than a parroting of the language from the relevant rule." (Doc. No. 31, at 3); *see also* Fed. R. Crim. P. 42(a)(1)(C) (requiring that the notice "state the essential facts constituting the charged criminal contempt and describe it as such"). Thus, the challenged statements do not require recusal under sections 455(a) or 455(b)(1).

Further, all the Court's orders relating to contempt are based on the Court's own observations made during the course of prior proceedings in the civil case and do not reflect the bias or antipathy that would require recusal. Defendant does not, and cannot, point to any extrajudicial source of disqualifying bias and prejudice, nor can he point to any evidence that this Court has "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. Thus, Defendant has not shown that enforcement of court orders would make a reasonable person, with full knowledge of all the circumstances, harbor doubts about this Court's impartiality. *See*

9

*Allen*, 587 F.3d at 253; *United States v. Brennerman*, No. 17-CR-0155 (LAK), 2017 WL 3421397 (S.D.N.Y. Aug. 8, 2017) (holding that the judge who issued the orders defendant violated and who referred the matter to the United States Attorney to consider whether to pursue criminal contempt was not required to recuse himself in the criminal contempt trial); *Benham v. Sequoia Equities, Inc.*, No. CV13-00205-VBF, 2013 WL 3872185, at *11 (C.D. Cal. May 29, 2013) ("On the contrary, it remains that law that adverse rulings alone are insufficient to demonstrate judicial bias."). Accordingly, Defendant's motion for recusal will be denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Recusal, (Doc. No. 29), is **DENIED.** The case will proceed to trial as scheduled on March 9, 2020.

Signed: February 27, 2020

Kenneth D. Bell
United States District Judge